IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:06-CT-3054-FL

| | |
|---|---|
| LINWOOD ERVIN BARROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| LENOIR COUNTY JAIL, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter comes before the court on the motion for summary judgment (DE # 20) pursuant to Federal Rule of Civil Procedure 56 of defendant Nurse Veach Rogers (hereinafter "defendant Rogers"). Also before the court is defendant Archie Bruton's (hereinafter "defendant Bruton") motion for summary judgment (DE # 24) pursuant to Rule 56. These matters are ripe for adjudication. For the following reasons, the court grants defendants' respective motions.

STATEMENT OF THE CASE

On May 15, 2006, plaintiff, a pretrial detainee, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against the above-named defendants as well as the Lenoir County Jail (hereinafter "Lenoir Jail"). In his complaint, plaintiff alleged that defendant Rogers was deliberately indifferent

to his serious medical needs in violation of the Fourteenth Amendment.[1] Plaintiff did not make any specific allegations against defendant Bruton in his complaint.

On June 26, 2006, the court conducted a frivolity review and dismissed plaintiff's complaint against Lenoir Jail as frivolous. The court also noted that plaintiff did not allege that any injury occurred as a result of defendant Roger's alleged excessive force. Accordingly, the court directed plaintiff to particularize his complaint to state what, if any, injury occurred as a result of defendant Roger's alleged excessive force. The court found that plaintiff failed to make any allegations against defendant Bruton, and directed him to particularize his claim against this defendant as well.

Plaintiff complied with this court's order to particularize on July 7, 2006. In particular, plaintiff stated how he was injured from defendant Roger's alleged conduct. Plaintiff also particularized his complaint against defendant Bruton, stating that defendant Bruton violated the Fourteenth Amendment Due Process Clause[2] because he was deliberately indifferent to plaintiff's serious medical needs and deliberately indifferent to his conditions of confinement.

On April 11, 2007, defendant Veach filed a motion for summary judgment, arguing that plaintiff's Eighth Amendment claim is without merit. Plaintiff filed a response on April 30, 2007. On May 21, 2007, defendant Bruton filed a motion for summary judgment, arguing that plaintiff's claims against him are without merit. Although he was notified of defendant Bruton's motion, plaintiff failed to file a response.

---

[1] Plaintiff is a pretrial detainee. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, as a practical matter, the contours of the Due Process Clause are coextensive with the substantive constitutional principles applied by the Eighth Amendment to convicted inmates. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992). Accordingly, plaintiff's Fourteenth Amendment Due Process claims will be analyzed under the Eighth Amendment.

[2] As stated, plaintiff's Fourteenth Amendment due process claims will be analyzed pursuant to the Eighth Amendment.

2

## STATEMENT OF THE FACTS

On August 31, 2005, plaintiff allegedly was involved in a domestic dispute in which he received a gunshot wound. (Mem. in Supp. of Def. Bruton's Mot. for Summ. J., Bruton Aff. ¶ 4.) Plaintiff was arrested following the incident and booked into Lenoir Jail. (Id., Bruton Aff. ¶ 5) The next day, plaintiff was taken to Pitt Memorial Hospital for treatment of his gunshot wound. (Id.)

Plaintiff remained hospitalized until September 13, 2005, and, on that date, a Safekeeping Order was entered into by Superior Court Judge Paul L. Jones. (Id., Bruton Aff. ¶ 6.) The Safekeeping Order directed that plaintiff be transferred to the custody of the North Carolina Department of Corrections (hereinafter "DOC") due to his medical needs. (Id.) Plaintiff remained in the Custody of the DOC from September 13, 2005 through January 19, 2006. (Id., Bruton Aff. ¶ 7.) On January 19, 2006, plaintiff was transferred back to Lenoir Jail, where he remains incarcerated. (Id.)

Defendant Rogers began seeing plaintiff on January 19, 2006. (Mem. in Supp. of Def. Rogers' Mot. for Summ. J., Rogers Aff. ¶ 3.) Defendant Rogers noted that plaintiff previously had been diagnosed with hypertension and that he had been taking twenty-five (25) milligrams of HCTZ to treat his condition. (Id.) Plaintiff continued to receive his prescribed medication at Lenoir Jail; however, he refused his medication on January 26, 2006, and from February 7, 2006 through February 9, 2006. (Id., Rogers Aff. ¶¶ 4-6, Exs. A and B.)

On February 9, 2006, plaintiff requested a different type of hypertension medication because he did not like the way his prescribed medication made him feel. (Id., Rogers Aff. ¶ 7.) In response, Lenoir Jail's physician Dr. James Adams altered his hypertension prescription. (Id., Rogers Aff. ¶

3

9, Ex. C.) Plaintiff still refused his medications from February 10 through February 26, 2006. (Id., Rogers Aff. ¶ 10, Exs. A and B.)

Dr. Adams again altered plaintiff's medications on March 7, 2006 and March 15, 2006. (Id., Rogers Aff. ¶ 11, Ex. C.) Plaintiff then took his medications on the 27th and 28th of February in 2006, but only sporadically through March 2006. (Id., Rogers Aff. ¶ 12, Ex. A and B.) On March 28, 2006, defendant Rogers discussed with plaintiff the risks of refusing his medications. (Id., Rogers Aff. ¶ 12.)

On April 5, 2006, defendant Rogers spoke with Dr. Adams regarding plaintiff's refusal to take his medications. (Id., Rogers Aff. ¶ 14, Ex. C.) Dr. Adams responded by again altering plaintiff's hypertension medication. (Id.) Plaintiff continued to refuse his medication in part from April 5-30, 2006, and for the month of May 2006. (Id., Rogers Aff. ¶¶ 15 and 16, Exs. A and B). On May 5, 2006, plaintiff was counseled by a Nurse Stevens regarding the risks of refusing his hypertension medication. (Id., Rogers Aff. ¶ 17, Ex. D.) Plaintiff acknowledged the risks, but refused to sign a refusal of medical treatment and release of responsibility that was presented to him. (Id.) At this time, plaintiff requested a visit with Dr. Adams, and Dr. Adams was informed of plaintiff's request. (Id.) Plaintiff then refused all medications in June, July, and August 2006. (Id., Rogers Aff. ¶ 18, Ex. A and B.)

On August 16, 2006, plaintiff submitted a sick call request and attended an appointment with defendant Rogers the next day. (Id., Rogers Aff. ¶ 26.) Plaintiff, however, refused medical treatment at his appointment. (Id., Rogers Aff. ¶ 26, Exs. A and B.)

Plaintiff again submitted a sick call request on August 22, 2006, and he attended an appointment with defendant Rogers the next day. (Id., Rogers Aff. ¶ 27.) At his appointment,

4

plaintiff requested an appointment with Dr. Adams, which was scheduled on August 29, 2006. (Id.) Dr. Adams discussed with plaintiff his refusal to take his prescribed medications. Plaintiff stated that he refused his medications because the pills were a different shape and color than the pills he previously was prescribed. (Id.) Plaintiff made an agreement with Dr. Adams that if the pharmacy sent him a letter indicating that the medications were the same despite the change in appearance, he would begin taking his medications. (Id.)

On August 29, 2006, Extensive Pharmacy faxed plaintiff a letter verifying the information he discussed with Dr. Adams. (Id.) Plaintiff, however, refused to sign for the letter. (Id.) Plaintiff then resumed his pattern of refusing all or part of his medications. In particular, plaintiff refused medications on September 1-6, 8-9, 11-12, 16-20, 23-27, and 29-30, 2006. (Id., Rogers Aff. ¶ 19, Exs. A and B.) Plaintiff also refused medications on the following: (1) October 1-13, 15-18, 20-25, 27-28, 2006; (2) November 1-7, 9,12-30, 2006; (3) December 1-12, 14-31, 2006; (4) January 2007; and February 2-27, 2007. (Id., Rogers Aff. ¶¶ 20-24, Exs. A and B.)

In addition to the above-stated medical care, defendant Rogers routinely monitored plaintiff's blood pressure. In particular, defendant Rogers assessed plaintiff's blood pressure on the following occasions: (1) January 19, 24, 25, 31, 2006; (2) February 8 and 27, 2006; (3) March 4, 13, and 28, 2006; (4) April 4, 18 and 27, 2006; (5) May 5, 2006; (6) August 16 and 23, 2006; (7) September 10 and 28, 2006; (8) October 29, 2006; (9) January 1, 17, and 31, 2007; and (10) February 24, 2007. (Id., Rogers Aff. ¶ 28, Ex. 1.)

Plaintiff stated that from the beginning of his incarceration at Lenoir Jail he was housed with violent juveniles who continually threatened his safety. He also alleged that he has been subjected

5

to unsanitary living conditions, including mold and mildew in the showers. Finally, plaintiff contended that Lenoir Jail is excessively noisy.

## DISCUSSION

I. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

II. Analysis

A. Plaintiff's Claims Against Defendant Rogers

Plaintiff claims that defendant Rogers violated his rights under the Eighth Amendment because he was deliberately indifferent to plaintiff's serious medical condition. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need

6

was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to demonstrate such an extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. See Helling v. McKinney, 509 U.S. 25, 33-35 (1993). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998); Sosebee v. Murphy, 797 F.2d 179, 181-82 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977).

Plaintiff alleges that defendant Rogers violated his Eighth Amendment rights during the course of her treatment of his hypertension condition. The court will begin with the objective prong of the Strickler test. To satisfy the objective prong of the Strickler test, a plaintiff must demonstrate "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381. Plaintiff's medical records do not reflect that he suffered any injury as a result of defendant Roger's alleged conduct. Therefore, he is unable to satisfy the objective prong of the Strickler test.

7

Even if plaintiff was able to satisfy the objective prong of the Strickler test, his claim against defendant Rogers still fails because he is not able to establish that defendant Rogers acted with deliberate indifference. Plaintiff's deliberate indifference claim against defendant Rogers is based on his allegations that defendant Rogers changed his medication on several occasions and failed to routinely monitor his blood pressure. Plaintiff's medical records, however, do not support plaintiff's argument. Rather, the records indicate that plaintiff was treated for his hypertension on a regular basis from January 19, 2006 through the date he filed this lawsuit. (Mem. in Supp. of Def. Rogers' Mot. for Summ. J., Rogers Aff. ¶ 3, Exs A-H.) The records further indicate that Dr. Adams altered plaintiff's hypertension medications on several occasions in response to plaintiff's complaints.[3] (Id., Rogers Aff. ¶¶ 9, 11, and 14, Ex. C.) Despite the continuous treatment for hypertension provided by defendant Rogers and Dr. Adams, plaintiff consistently refused to take his prescribed medications.[4] (Id., Rogers Aff. Ex. C.) Finally, plaintiff's medical records demonstrate that defendant Rogers regularly took plaintiff's blood pressure from January 19, 2006 through February 24, 2007. These facts do not support the conclusion that defendant Rogers acted with deliberate indifference, and plaintiff has not presented any evidence to the contrary. Therefore, plaintiff has not established that defendant Rogers' treatment of his hypertension condition violated his Eighth Amendment rights.

---

[3] Plaintiff alleges that defendant Rogers altered his medications. However, plaintiff's medical records show that defendant Adams, and not defendant Rogers, made changes to plaintiff's hypertension medications. (Id., Rogers Aff., Ex. C.)

[4] At one point, plaintiff expressed concern that he was not being given the correct medication because the shapes and colors of the pills were different from those he took pre-incarceration. Dr. Adams responded by directing the pharmacy to send plaintiff a letter stating that his were the same despite their change in appearance. (Id., Rogers Aff. ¶ 27, Ex. C.) Plaintiff refused to sign for the letter. (Id.)

8

Plaintiff also alleges that defendant Rogers acted with deliberate indifference because she refused his requests to see a physician on several occasions, including on March 28, 2006 and on April 4, 2006. Again, plaintiff's medical records do not support his allegations because they do not reflect a sick call request for either March 28, 2006 or April 4, 2006. (Id., Rogers Aff. Ex. F[5].) As for plaintiff's statement that defendant Rogers refused his request to see a doctor on other occasions, plaintiff has not provided any factual support for this statement. Although *pro se* litigants are held to less stringent pleading standards than attorneys, the court is not required to "accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). There is a minimum level of factual support required. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Plaintiff's general allegation that his requests to see a physician were refused on several occasions does not satisfy this minimum level. For the above-stated reasons, plaintiff is unable to establish the subjective prong of the Strickler test. Because plaintiff is unable to establish both the subjective and objective prongs of the Strickler test, his Eighth Amendment claim against defendant Rogers is without merit.

B. Plaintiff's Claim against Defendant Bruton

Plaintiff alleges three claims against defendant Bruton, including: (1) defendant Bruton was deliberately indifferent to his conditions of confinement; (2) defendant Bruton failed to protect plaintiff from violence and threats of violence; and (3) defendant Bruton was deliberately indifferent to his serious medical condition.

---

[5] Exhibit F to defendant Roger's motion for summary judgment contains a copy of all of the sick call requests from plaintiff while he was at Lenoir Jail.

1. Conditions of Confinement

The Eighth Amendment protection for cruel and unusual living conditions has both objective and subjective components. In order to satisfy the objective element, the conditions complained of must rise to the level of a deprivation of a basic human need, such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). The subjective element requires that the prison official know of and disregard an excessive risk to an inmate's health or safety. Farmer, 511 U.S. at 834. Plaintiff also must produce evidence of serious or significant physical or emotional injury resulting from the challenged condition to withstand summary judgment. Strickler, 989 F.2d at 1380; see 42 U.S.C. § 1997e(e) (stating that a prisoner cannot maintain a § 1983 action for mental or emotional injury absent physical injury).

Plaintiff asserts that defendant Bruton was deliberately indifferent to his conditions of confinement because he housed plaintiff with disruptive violent juvenile inmates, placed him in unsanitary conditions, and placed him in an area with excessive noise. The court will begin its analysis with the objective prong of the Eighth Amendment test. As stated, a plaintiff must allege a significant physical or emotional injury from the challenged condition to establish the objective prong of the Eighth Amendment test. Strickler, 989 F.2d at 1380. Plaintiff has not established that he suffered any physical injury as a result of the alleged conduct. Therefore, plaintiff is unable to satisfy the objective prong of the Eighth Amendment test.

Even if plaintiff was able to satisfy the objective prong of the Eighth Amendment test, he still would not be entitled to relief because he is unable to establish that defendant Bruton acted with deliberate indifference. Beginning with his first prison conditions claim, plaintiff is unable to show that defendant Bruton was deliberately indifferent to the presence of disruptive violent juveniles at

10

Lenoir Jail. Most noteworthy is plaintiff's failure to identify any specific act or threat of violence by any fellow juvenile inmate. As previously stated, there is a minimum level of factual support required to allege a claim. White, 886 F.2d at 723. Plaintiff has not met this burden with respect to his allegations regarding the juvenile offenders.[6] Therefore, plaintiff is unable to establish that defendant Bruton was deliberately indifferent to the risk of violent juvenile offenders at Lenoir Jail.

Plaintiff also is unable to demonstrate that defendant Bruton was deliberately indifferent to the alleged poor sanitation conditions of Lenoir Jail. In support of his claim, plaintiff alleges that there was mold and mildew in the cells and around the showers. Lenoir Jail has an established procedure for maintaining the facility in a sanitary and clean manner. (Id., Bruton Aff. ¶ 22.) There is no evidence that Lenoir Jail failed to follow its established procedure. Rather, the evidence in the record shows that during the relevant time period, Lenoir Jail was in compliance with the sanitation standards under North Carolina law. (Id., Bruton Aff., ¶ 27, Exs. 1, 2, and 3.) Additionally, to the extent that mold and mildew were present at Lenoir Jail during this time period, there is no evidence that defendant Bruton was deliberately indifferent to its presence. Accordingly, plaintiff has not demonstrated that defendant Bruton acted with deliberate indifference with regard to the sanitation of Lenoir Jail.

Finally, plaintiff is unable to establish that defendant Bruton was deliberately indifferent to excessive noise at Lenoir Jail. Plaintiff's allegations consist of general statements that juveniles at the prison often were loud during the evening. Periodic loud noise describes a mere inconvenience, which

---

[6] The court notes that the evidence in the record indicates that during the time period immediately preceding plaintiff's complaint only about 3.8% to 6.3% of the prison population consisted of juveniles. (Mem. in Supp. of Def. Bruton's Mot. for Summ. J., Bruton Aff. ¶¶ 16 and 17, Exs 2 and 3.) Moreover, there were no reported incidents of violence or threats of violence between a juvenile and plaintiff. (Id., Bruton Aff. ¶ 12.) Accordingly, based upon the foregoing, the evidence fails to establish that defendant Bruton was deliberately indifferent to alleged threats of violence from juveniles directed to plaintiff.

11

is not sufficient to arise to the level of an Eighth Amendment claim. See Ajaj v. United States, 479 F. Supp. 2d 501, 512 (D.S.C. 2007) (citing Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994) ("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare.")). Furthermore, plaintiff has not demonstrated that defendant Bruton was aware of and deliberately disregarded an excessive noise level at Lenoir Jail. Because plaintiff has not demonstrated that defendant Bruton acted with deliberate indifference, he is unable to satisfy the second prong of the Strickler test. Therefore, his Eighth Amendment prison conditions claims are without merit.

### 2. Failure to Protect From Violence

Plaintiff claims that defendant Bruton violated his Eighth Amendment right to be free from violence at the hands of other inmates. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, not all inmate-on-inmate injuries translate into constitutional liability for prison officials and officers. See id. at 834.

Prison officials cannot be found liable under the Eighth Amendment for failing to protect an inmate unless the official knows of an excessive risk of danger to inmate health and safety, and the official knowingly and deliberately acts, or fails to act, in a manner that uniquely increases the risk. See Farmer, 511 U.S. at 837; Rich v. Bruce, 129 F.3d 336, 338-40 (4th Cir. 1997). This is a subjective test which requires that the official both be aware of facts from which the inference of danger can be drawn, and that he draw the inference. Farmer, 511 U.S. at 837. The Eighth Amendment is not violated by negligent failure to protect inmates from violence. Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991).

12

Plaintiff is unable to establish that defendant Bruton was deliberately indifferent to his risk of inmate-on-inmate violence because he is unable to show that defendant Bruton was aware of any alleged threat. As stated above, plaintiff failed to identify any specific act or threat of violence by any fellow inmate, juvenile or otherwise. Furthermore, there is no evidence in the record to support plaintiff's contention that prison officials were aware that he was at risk for inmate-on-inmate violence and/or that they ignored that risk. Therefore, plaintiff is unable to establish that defendant Bruton was deliberately indifferent to his risk of inmate-on-inmate violence.

### 3. Deliberate Indifference

Plaintiff alleges an Eighth Amendment claim against defendant Bruton based upon the treatment he received for his hypertension. As stated, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler, 989 F.2d at 1379. Here, plaintiff is unable to establish the subjective component of his Eighth Amendment claim. Defendant Bruton is the administrator for Lenoir Jail. (Mem. in Supp. of Def. Bruton's Mot. for Summ. J., Bruton Aff. ¶ 1.) As jail administrator, defendant Bruton was not involved in the day-to-day medical treatment of plaintiff. (Id., Bruton Aff. ¶ 33.) Instead, he relied upon the medical staff at Lenoir Jail to provide medical treatment. Correctional supervisors are entitled to rely on the expert opinions of medical officials as to an inmate's medical needs. See Miller v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). There is no evidence that defendant Bruton was deliberately indifferent to plaintiff's serious medical needs, or that he intended to cause plaintiff harm. Therefore, this claim is without merit.

13

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' respective motions for summary judgment (DE #s 20 and 24). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 14th day of November, 2007.

LOUISE W. FLANAGAN
Chief United States District Judge